IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 0 1 2008

Michael N. Milby, Clerk

| | | |
|---|---|---|
| QIANA NELSON; RENEE NELSON; and COLETTE NELSON | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. |
| THE COUNTY OF FORT BEND, TEXAS; DAVID CRAVEN; and ROBERT PELTON | § § § § | **H-08-2399** |
| Defendants. | § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Qiana Nelson, Renee Nelson and Colette Nelson bring this action against the County of Fort Bend, Texas, David Craven and Robert Pelton, and would respectfully show the following:

## I. NATURE OF THE ACTION

1.       This is a civil action for damages and injunctive relief brought by Qiana Nelson, Renee Nelson, and Colette Nelson (Plaintiffs) against the County of Fort Bend, Deputy David Craven and former Deputy Robert Pelton (Defendants) for their unlawful stop, use of excessive force, assault, unlawful arrest, detention and conspiracy to bring false, malicious prosecution against Plaintiffs Qiana Nelson and Renee Nelson in violation of their Fourth, Fifth, Eighth and Fourteenth Amendment rights under the United States Constitution and actions under the color of law in violation of their civil rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

2.       Plaintiffs Qiana Nelson, Renee Nelson and Colette Nelson also bring alternative claims against Defendants David Craven and Robert Pelton in the event that

the Defendants were acting in their individual capacity for assault, battery, false imprisonment, defamation, malicious prosecution, and intentional as well as negligent infliction of emotional distress as allowed by Texas law. Plaintiffs Qiana Nelson and Renee Nelson also bring claims against Defendants for engaging in racial profiling to interfere with their rights to travel and equal protection under the United States Constitution and in violation of Texas Code of Criminal Procedure Article 2.131. Plaintiff Colette Nelson brings her bystander claim against Defendants David Craven, Robert Pelton and the County of Fort Bend County, Texas, for intentional infliction of emotional distress as allowed by Texas law.

## II. PARTIES

3.     Plaintiff Qiana Nelson  is a citizen of the United States and is a resident of Fort Bend County, Texas.

4.     Plaintiff Renee Nelson is a citizen of the United States and was a resident of Fort Bend County, Texas, at the time of the incident in question.

5.     Plaintiff Colette Nelson is a citizen of the United States and is a resident of Fort Bend County, Texas.

6.     Defendant, the County of Fort Bend, is a Texas county. Fort Bend County operates the Fort Bend County Sheriff's Department ("FBSO"). The County of Fort Bend may be served with citation herein by and through it's agent for service, the Honorable Robert Hebert, Fort Bend County Judge at 301 Jackson Street, Suite 719, Richmond, Texas 77469. Additional service is being made on Fort Bend County Commissioners: Tommy Stavinoha at 701 South Fourth Street, Richmond, Texas 77469, Grady Prestage at 303 Texas Parkway, Suite 213, Missouri City, Texas 77459, Andy Meyers at 1809

Eldridge Road, Sugarland, Texas 77478, and James Patterson at 12919 Dairy Ashford Road, Suite 200, Sugar Land, Texas 77478. Pursuant to Federal Rule of Civil Procedure 4(d), Plaintiffs request that Defendant waive service of a summons. Concurrent with the filing of this pleading, Plaintiffs are sending by first-class mail RRR, a copy of the complaint along with the required notice pursuant to Rule 84 informing Defendant of the consequences of a failure to comply with this request.

7.       Defendant David Craven of the Fort Bend County Sheriff's Department and at all times material herein was a sheriff's deputy acting in the course and scope of his employment for Fort Bend County, Texas, may be served in his individual capacity with process at 1410 Ransom Road, Richmond, Texas 77469. Pursuant to Federal Rule of Civil Procedure 4(d), Plaintiffs request that Defendant waive service of a summons. Concurrent with the filing of this pleading, Plaintiffs are sending by first-class mail RRR, a copy of the complaint along with the required notice pursuant to Rule 84 informing Defendant of the consequences of a failure to comply with this request.

8.       Defendant Robert Pelton, formerly of the Fort Bend County Sheriff's Department was at all times material herein a sheriff's deputy at the time of the incident, acting in the course and scope of his employment for Fort Bend County, Texas, may now be served in his individual capacity with process at the Texas Alcohol Beverage Commission at 427 West 20th Street, Suite 600, Houston, Texas 77008. Pursuant to Federal Rule of Civil Procedure 4(d), Plaintiffs request that Defendant waive service of a summons. Concurrent with the filing of this pleading, Plaintiffs are sending by first-class mail RRR, a copy of the complaint along with the required notice pursuant to Rule 84 informing Defendant of the consequences of a failure to comply with this request.

### III. JURISDICTION & VENUE

9.     This is a civil rights action brought under inter alia, the Fourth, Fifth,

Eighth and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 1983;

42 U.S.C. § 1985; 42 U.S.C. § 1986; 42 U.S.C. § 1988 (b) and (c), and Texas law to

redress the deprivation of rights, privileges and immunities guaranteed to Plaintiffs by

constitutional and statutory provisions.

10.     This Court has original jurisdiction over Plaintiff's constitutional and

federal law claims pursuant to 28 U.S.C. § 1331.

11.     This Court has supplemental jurisdiction of Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy

described by Plaintiff's federal claims.

12.     Venue is proper because the cause of the action occurred within the

Southern District of Texas, Houston Division.

### IV. BACKGROUND

13.     On August 7, 2006, Plaintiff Qiana Nelson left her home in her Ford

Taurus automobile at approximately 8:30 a.m. en route to retrieve her little sister,

Plaintiff Renee Nelson from work as a night stocker at a Super Target retail store located

on State Highway 6 in Sugarland, Texas. Upon picking Renee up, Qiana began her

journey back to her apartment in Richmond, Texas which she shared with Renee.

14.     At approximately 9:00 a.m., Plaintiffs Qiana and Renee Nelson were

pulled over on a traffic violation by Defendants deputies Robert Pelton and David

Craven, who were both on duty and in the scope and course of their employment with the

Fort Bend County Sheriff's Department (FBSO). The reason given for the stop was that Qiana allegedly failed to signal left while merging into the left turn lane.

15      Upon seeing the activation of emergency equipment of the squad car, Plaintiff Qiana Nelson, immediately turned into a CVS pharmacy parking lot at the intersection of Highway 6 and Old Richmond Road, parking directly behind the CVS building, and turned off the engine. Qiana then told Plaintiff Rene Nelson to call their mother on Qiana's cell phone, which Rene immediately began to do.

16.      Defendant, Deputy Pelton, the driver of the squad car, pulled in immediately behind Plaintiff's Ford Taurus, blocking the vehicle in, and exited his vehicle. What should be noted is that the squad car assigned to the Defendants was equipped with an in-car video device that was designed to activate automatically upon the activation of the car's emergency equipment, presumably recording the entire incident.

17.      Defendant Pelton approached the Taurus from the driver's side, while Defendant Deputy Craven exited the squad car and approached from the passenger side. There is no evidence that the Defendants ran the license plate of the vehicle to check for active warrants nor were any active warrants pending for either Plaintiffs. Defendant Pelton then knocked on the driver's side window and yelled at Plaintiff Qiana Nelson to roll down her window.

18.      Plaintiff Qiana Nelson, while attempting to retrieve her identification and insurance information, replied that the window did not roll down due to obvious physical damage to the driver's side door. By this time, Plaintiff Renee Nelson had managed to contact Plaintiff Colette Nelson, Qiana Nelson's mother, via cell phone.

19.     Defendant Pelton then proceeded to open the driver's side back door, stepped into the vehicle and began to strike Plaintiff Qiana Nelson repeatedly in the back of the head with a closed fist, demanding that she open the driver's side door and exit. Plaintiff Colette Nelson, to her horror, overheard this entire assault through the screams of her daughter while still connected via cell phone.

20.     At the same time Defendant Craven attempted to make contact with Plaintiff Renee Nelson on the passenger side of the Taurus, demanding that Rene open the door. Renee, terrified by the assault on her sister, froze. Plaintiff Qiana Nelson, while still shocked and stunned by Defendant Pelton's unprovoked assault, then opened her driver's side door and attempted to comply with Defendant Pelton's command. Defendant Pelton then immediately deployed an X26 Taser Device striking Plaintiff Qiana Nelson in the upper torso, paralyzing her with 50,000 volts of electricity while she was still seated in the front seat of her car.

21.     Defendant Craven then ran around to the front of the Taurus in order to provide backup for Defendant Pelton. Both Defendants dragged Plaintiff Qiana Nelson out of the car, threw her face first onto the pavement while she was still paralyzed, and began to administer strikes to her back, arms and legs with their nightsticks.

22.     Plaintiff Qiana Nelson was then handcuffed and beaten further with nightsticks by both Defendants. Plaintiff Renee Nelson, fearing that the Defendants were killing her sister, opened her door and walked around the back of the Taurus to plead with the Defendants to stop their assault. Defendant Pelton then discontinued his assault of Plaintiff Qiana Nelson and approached Plaintiff Renee Nelson.

23.     Defendant Pelton, without warning, then deployed oleoresin capsicum spray (pepperspray) to the face of Plaintiff Renee Nelson. Renee, upon being hit with the OC spray, placed both of her hands on the squad car and was immediately thrown to the ground by Defendant Pelton who then began to strike her repeatedly on the back of her legs with his nightstick. Plaintiff Rene Nelson was then handcuffed and struck again in the back with the nightstick by Defendant Pelton.

24.     Plaintiff Qiana Nelson was then thrown on her stomach into the back of Defendants Pelton and Craven's squad car by both Defendants. At this point, Qiana began to hyperventilate and Emergency Management Service (EMS) was called. EMS arrived a few minutes later and removed the two hooks that were lodged in Qiana's abdomen from the taser.

25.     No eyewitnesses were ever interviewed at the scene by either Defendant Pelton or Craven, nor did anyone else from the Fort Bend County Sheriff's Department interview anyone, although several members of the Department were on the scene, and the incident occurred at 9:00 a.m. while the pharmacy was open for business. When Plaintiff Colette Nelson arrived on the scene minutes later demanding to know why her daughters were being placed under arrest, she was threatened with arrest herself and told to "back-off."

26.     A female Deputy, Deputy Mayle arrived on the scene and spoke with Plaintiff Qiana Nelson who was now sitting outside of the squad car. Qiana expressed her fear and apprehension to Mayle regarding being left alone with Defendants Craven and Pelton. Qiana told Mayle that she had done nothing wrong to which Mayle replied "Regardless of what you say, I'm gonna take the side of my partners."

27.     A few minutes later, other members of the Fort Bend County Sheriff's Department began to arrive on the scene, all of whom were Caucasian (Plaintiffs Qiana Nelson and Renee Nelson are African-American). An African-American deputy arrived, but quickly drove off. At this point, Qiana overheard Defendant Pelton telling the other deputies that Qiana had hit him. Deputy Pelton then returned to the squad car and placed Qiana in the backseat.

28.     Defendant Pelton then got in the front seat of the squad car and began to manipulate the in-car camera which was mounted in the area of the rear view mirror. Defendant Pelton began punching buttons on the device. He then got out of the squad car and spoke to Defendant Craven. At that point, Defendant Craven returned to the car and he then began manipulating the in-car camera punching buttons himself. Plaintiff Qiana Nelson was in full view of this manipulation as she was seated in the backseat.

29.     Both Defendants then searched Plaintiff's Qiana Nelson's Ford Taurus. It should be noted that Qiana Nelson was never cited with a traffic violation, nor was any contraband or any open alcoholic containers found in the Ford Taurus subsequent to her arrest.

30.     Both Defendants returned to the squad car and sat down. At this time Plaintiff Qiana Nelson, who again was in full view and earshot of the front cabin area of the squad car overheard Defendant Pelton turn to his partner Defendant Craven and say "If we messed up, it's on me."

31.     Defendant Craven then began to type up Plaintiff Qiana Nelson's criminal background information on his in-car computer. The information revealed "no history."

Defendant Craven then typed in Plaintiff Renee Nelson's criminal background information on the computer and again the inquiry revealed "no history."

32.     Plaintiff Renee Nelson was transported by Deputy S. Mayle of The Fort Bend County Sheriff's Department. On the way to the Department, Renee and Deputy Mayle had a conversation. During the conversation, Mayle told Plaintiff Renee Nelson that, "people like her (Qiana) always give us some sort of problems like the way your sister was acting." Mayle further stated, "by looking at your sister, I could tell she causes a lot of trouble." What is salient here is that Plaintiffs Qiana Nelson and Renee Nelson are half-sisters. They both share the same father who happens to be African-American. However, they have different mothers. Renee's biological mother is Caucasian, whereas Qiana's mother, Plaintiff Collette Nelson is a dark-skinned African-American Woman. Renee is significantly fairer skinned than her sister Qiana.

33.     Upon arrival at the department and while booking Plaintiff Renee Nelson into the jail, Renee asked Defendant Pelton what he had used to hit her. Defendant Pelton replied that he used his nightstick. Defendant Pelton further stated, "…your lucky I just hit you with that (nightstick) and sprayed you; next time now that I know you, and I pull you over, I'll just shoot you instead."

34.     Plaintiff Qiana Nelson was charged with Assault on a Public Servant. Plaintiff Renee Nelson was charged with Attempted Assault on a Public Servant. They were both booked and held in lieu of $30,000 bond each.

35.     On August 8, 2006, a follow-up investigation of the incident was assigned to Detective Brian Wall of the Fort Bend County Sheriff's Department. Detective Wall

interviewed Defendants Pelton and Craven. Detective Wall then interviewed Plaintiff Renee Nelson.

36.    In addition, Detective Wall also discovered through further investigation (an interview with the then Patrol Commander Captain L. Rowland) that the in-car video device from Defendants Pelton and Craven's squad car had failed to record the incident because the device had "not been functioning properly." It should be noted that the offense reports filed in this case from Defendants Craven and Pelton are replete with inconsistencies, the most glaring of which is the manner and means by which Plaintiff Qiana Nelson allegedly assaulted Defendant Pelton. Defendant Craven claims that Qiana opened the door on his partner's arm, whereas Defendant Pelton claims that Qiana "shut" the door on his arm.

37.    On August 10, 2006, both Plaintiff Qiana Nelson and Plaintiff Renee Nelson filed internal affairs complaints against Defendants Pelton and Craven for their use of excessive force, false arrest and racial profiling. These complaints were allegedly investigated and eventually found to be without merit by Detective Fontenot of the internal affairs division of the Fort Bend County Sheriff's Department.

38.    Plaintiffs Qiana Nelson and Renee Nelson's respective cases were originally assigned to the 240th Judicial District Court but were transferred to the 434th Judicial District Court of Fort Bend County and set for jury trial.

39.    Through Texas Public Information Act requests, the maintenance records for the sheriff's department squad car involved in the incident were obtained for the period spanning one (1) year prior to the incident on August 7, 2006, through January 30, 2007. These records revealed that no requests for service were ever made by anyone in

the employ of the FBSO to repair the in-car video device for that squad car during that time frame.

40.     Other information requests revealed that Defendant Pelton was not Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) qualified on August 7, 2006, to carry and deploy the X26 Taser device in violation of departmental policy. In fact, as per departmental policy upon the deployment of the taser device, the deploying deputy is to file a taser usage accompanying report. The report filed in connection with Plaintiff Qiana Nelson's tasering was filed by Defendant Craven, indicating that Defendant Craven deployed the device as opposed to Defendant Pelton in an attempt to cover-up their collective wrongdoing.  In addition, Defendant Pelton never filed an OC spray usage report in conjunction with his deployment of the spray on Rene, again presumably contrary to departmental policy.

41.     Plaintiffs Qiana Nelson and Renee Nelson's cases were to be tried by jury on July 31, 2007. On July 30, 2007, both Plaintiffs, Qiana Nelson and Renee Nelson's respective cases were dismissed by the Fort Bend County District Attorney who cited that the cases were being dismissed "in the interests of justice."

42.     Furthermore, it was made known on the record by the Assistant District Attorney handling the case that the dismissal was being proposed by the State of Texas at the behest of Defendants Pelton and Craven. On an agreed order between the Fort Bend County District Attorney and the Plaintiffs, Qiana and Renee Nelson, the Court ordered that the records of arrests of both Qiana Nelson and Rene Nelson be expunged, effectively resulting in a no probable cause finding to arrest either Plaintiff on August 7, 2006.

43.     Plaintiff Qiana Nelson and Plaintiff Renee Nelson would further show that, in addition to the pain and wounds suffered from their respective tasering, pepper spraying and beating, the Defendant's actions have caused Plaintiff Qiana Nelson, Plaintiff Renee Nelson and Plaintiff Colette Nelson to suffer mental anguish and emotional distress.

44.     Additionally, Plaintiffs Qiana Nelson, Renee Nelson and Colette Nelson would show that at all times material hereto, Defendants Pelton and Craven were acting in the scope of their employment as agents, servants and employees of Defendant Fort Bend County within its executive branch, and were performing a governmental function. Plaintiffs would further show that the Defendants Pelton and Craven's actions were the result of, or within the scope of, customs, policies, practices and/or procedures of Fort Bend County with full complicity and knowledge by aforesaid County.

## V. CIVIL RIGHTS ACTIONS

45.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary.

46.     Plaintiffs Qiana Nelson and Renee Nelson would show that Defendants Robert Pelton and David Craven clearly used race as a factor for reasonable suspicion and making a traffic stop of Plaintiff Qiana Nelson. The facts show that there was no probable cause for the Plaintiffs Qiana Nelson and Renee Nelson's arrest and that no traffic citations were ever issued. Plaintiffs would further show that Defendants actions were in violation of TEX.CODE CRIM.PROC. ANN art. 2.131-137 (Vernon Supp. 2004) and are strictly liable to Plaintiff.

47.    Plaintiffs Qiana Nelson and Renee Nelson would show that Defendant's Robert Pelton and David Craven denied Plaintiffs their rights to be free from cruel, unusual and excessive punishment, right to travel, right of equal protection, and deprived them of due process of law, in violation of the Fourth, Fifth and Eighth Amendments to the United States Constitution as incorporated to the states by the Fourteenth Amendment.

48.    The Defendants Craven and Pelton acted under the color of law to deprive Plaintiffs Qiana Nelson and Renee Nelson of their civil rights, privileges or immunities secured by the Constitution and laws pursuant to 42 U.S.C. § 1983 by detaining Plaintiffs without reasonable suspicion, arresting Plaintiffs without probable cause and violently assaulting Plaintiffs. Plaintiffs would show that the Defendants were acting within custom, policy, practice and/or procedure of Defendant Fort Bend County at the time of the incident

49.    The Defendants, Craven, Pelton and the County of Fort Bend, Texas, conspired to obstruct justice and deprive Plaintiffs, Qiana Nelson and Renee Nelson of their rights to equal protection of the laws pursuant 42 U.S.C. § 1985 by destroying evidence that would have shown Plaintiffs, Qiana Nelson and Renee Nelson's actual innocence from the criminal charges levied against them. In the alternative, the County of Fort Bend had a duty pursuant to 42 U.S.C. § 1986 to prevent the destruction of above-mentioned evidence. Refusal or neglect of the same is actionable by law and asserted as a violation of the rights of Plaintiffs. Plaintiffs would further show that as a result of these violations of their rights, Plaintiffs Qiana Nelson and Renee Nelson have suffered damages within the jurisdiction limits of this Court.

## VI. EXCESSIVE FORCE

49.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Plaintiff would show that Defendant's actions on the occasion in question were wrongful and constituted gross negligence in depriving Plaintiffs Qiana Nelson and Rene Nelson of their constitutional rights, as alleged more fully below.

50.     Plaintiffs would show that at all times material hereto, Defendants had a duty to avoid infliction of unjustified bodily injury to Plaintiffs Qiana Nelson and Renee Nelson, to protect Plaintiff's bodily integrity and to not trample on Plaintiff's constitutional rights.

51.     Plaintiff would show that Defendants Pelton and Craven failed to act as reasonable peace officers would have acted under similar circumstances. That is, Defendants tasered, pepper sprayed, disabled, assaulted and arrested Plaintiffs without probable cause, even though Plaintiffs Qiana Nelson and Renee Nelson never threatened or provoked Defendants and complied to the degree any reasonable person would have under similar circumstances. Defendant's actions and subsequent accusations of Plaintiff's criminality were clearly a subterfuge to "cover-up" their own racial profiling and other wrong doing.

52.     Defendant's actions were not reasonable because they failed to follow reasonable procedures and they used excessive force in restraining Plaintiffs in a non-life threatening situation.

53.     Plaintiffs Qiana and Renee Nelson would show that Defendants Pelton and Craven denied Plaintiffs their rights to be free from cruel, unusual and excessive punishment, and to be free from deprivation of their rights without due process of law, in

violation of the Fourth, Fifth and Eighth Amendments to the United States Constitution as incorporated to the states by the Fourteenth Amendment. Plaintiffs would show that Defendants were acting within custom, policy, practice and/or procedure of Defendant Fort Bend County at the time of the incident. Plaintiffs would further show that as a result of these violations of their rights, Plaintiffs have suffered damages within the jurisdictional limits of this court.

## VII. FALSE ARREST

54.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Additionally and in the alternative, Plaintiffs Qiana Nelson and Renee Nelson would show that Defendants Craven and Pelton's actions were objectively unreasonable and done in bad faith in that the Defendants arrested Plaintiffs Qiana Nelson and Renee Nelson without probable cause to think that Plaintiffs had committed the crime of which Plaintiff was accused. Plaintiffs would further show that they suffered damages within the jurisdictional limits of this court from this wrongful arrest and that such arrest was done under color of law.

55.     Plaintiffs would show that Defendants were acting within custom, policy, practice and/or procedure of Defendant Fort Bend County at the time of the incident. Plaintiff would additionally show that such wrongful arrest was done in violation of Plaintiffs' rights under the Fourth, Fifth and Eighth Amendments of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiffs have suffered damages within the jurisdictional limits of this court as a result of these violations of her rights.

## VIII. MALICIOUS PROSECUTION

56.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Additionally and in the alternative, Plaintiffs would show that Defendants Craven and Pelton caused criminal charges to be filed against Plaintiffs Qiana Nelson and Renee Nelson, and the Defendants did so knowing that such charges were baseless. Furthermore, Plaintiffs would show that Defendant Fort Bend County by and through the Fort Bend County District Attorney's Office continued to aggressively prosecute Plaintiffs after Defendants became aware that the charges levied against Plaintiffs were baseless. Plaintiffs would show that Defendants were acting within custom, policy, practice and/or procedure of Defendant Fort Bend County at the time of the incident. Plaintiffs would further show that they suffered damages within the jurisdictional limits of this Court from such malicious prosecution, and that Plaintiffs have suffered violations of their rights under the Fourth, Fifth and Eighth Amendments of the United States Constitution, as incorporated to the states by the Fourteenth Amendment.

## IX. NEGLIGENT FAILURE TO TRAIN AND DISCIPLINE

57.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Additionally and in the alternative, Plaintiffs Qiana Nelson and Renee Nelson would show that all times material hereto, Defendant Fort Bend County by and through its Sheriff's Department lacked guidelines both to restrict the use of Tasers and oleoresin capsicum spray to monitor their use, or, if such guidelines existed, they were grossly inadequate to ensure the proper and restrained use of Tasers and oleoresin capsicum spray by Sheriff's Department personnel.

58.     Plaintiffs Qiana Nelson and Renee Nelson would show that Fort Bend County Sheriff Department leadership endorsed the unfettered use of Tasers and oleoresin capsicum spray even in situations were no crime was committed. Plaintiffs would show that Defendant Fort Bend County's failure to properly train, supervise, test, regulate, discipline or otherwise control its employees and the failure to promulgate proper guidelines for the use of Tasers and oleoresin capsicum constitutes a custom, police, practice and/or procedure in condoning unjustified use of force in violation of the constitutional rights of Plaintiffs. Furthermore, Defendant Fort Bend County's failure to properly train, supervise, test, regulate, discipline or otherwise control its employees serves to condone the improper behavior previously alleged. As a result of this failure to train and discipline, Plaintiff has suffered damages within the jurisdictional limits of this court.

## X. NEGLIGENT RETENTION

59.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Additionally and in the alternative, Plaintiffs Qiana Nelson and Renee Nelson would show that Fort Bend County violated Plaintiffs' rights by failing to restrict both Defendants Pelton and Craven when they were aware that 1) Craven had been reprimanded previously for improper law enforcement conduct, and 2) Pelton had been reprimanded previously for improper law enforcement conduct. Despite these instances of misconduct, Defendant Fort Bend County assigned these deputies together, in the same squad car for patrol. Defendant Fort Bend County's actions or inactions constituted a custom, policy, practice and/or procedure to continue the employment of

unfit deputies. As a result, Plaintiffs have suffered damages within the jurisdictional limits of this Court.

## XI. DEFAMATION

60.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Plaintiffs Qiana Nelson and Renee Nelson would show that Defendants Craven and Pelton knowingly made false statements to impute that Plaintiffs committed some crime subsequently maligning their good names and reputations which was clearly a ruse to cover-up their own wrongdoing. As a result, Plaintiffs have suffered damages within the jurisdictional limits of this Court.

## XII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Plaintiffs Qiana Nelson and Rene Nelson would show that Defendants Craven, Pelton and the County of Fort Bend's deliberate stop, arrest and violent assault of Plaintiffs with the unwarranted use of a Taser and OC spray amounted to extreme and outrageous conduct, and as such, Paintiffs suffered severe emotional distress as they were both made to bear witness to their respective loved one being beaten, electrocuted and doused with chemicals.

62.     Plaintiff Colette Nelson, who at the time was on a cell phone speaking with her daughter Qiana during the initial assault by Pelton, was subjected to the screams of torment and pain of her loved one, and as such was owed a duty as a bystander under Texas law to be free from such an occurrence. Colette Nelson suffered severe emotional distress as a result of the above-mentioned extreme and outrageous conduct.  As a result, Plaintiffs have suffered damages within the jurisdictional limits of this Court.

## XIII. INTENTIONAL TORTS OF PELTON AND CRAVEN

63.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Plaintiffs Qiana Nelson and Renee Nelson would show if Defendants Pelton and Craven were acting in their individual capacity, then they committed the following intentional torts against Plaintiffs:

        a.      Assault and Battery

        b.      Defamation and Slander

        c.      False Imprisonment

        d.      Malicious Prosecution

        e.      Intentional Infliction of Emotional Distress

64.     As a direct and proximate result of the actions of Defendants, Plaintiffs Qiana Nelson and Renee Nelson have suffered physical injury, physical pain and suffering, mental anguish, severe emotional distress, and embarrassment damages within the jurisdictional limits of this court.

## XIV. CIVIL RIGHTS DAMAGES

65.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. As a direct and proximate result of the actions of Defendants, Plaintiffs Qiana Nelson and Renee Nelson have suffered physical injury, physical pain and suffering, mental anguish, severe emotional distress, loss of reputation and embarrassment damages within the jurisdictional limits of this Court.

## XV. TEXAS TORT CLAIMS ACTIONS

66.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Additionally and in the alternative, Plaintiffs Qiana Nelson and

Renee Nelson would show that Fort Bend County is liable for the negligent use or non-use of tangible property. Plaintiff would show that Defendant Fort Bend County failed to implement the use of audio/video recording to document use of Tasers and oleoresin capsicum spray issued to its deputies/county personnel. The failure to use this equipment prevented scrutiny of the deputies' actions which, in turn, allowed the undocumented infliction of serious physical injury to Plaintiffs. As a result of Defendant's negligence, Plaintiffs have suffered damages within the jurisdictional limits of this court.

67.     Defendant Fort Bend County is responsible for the actions of Defendants Pelton and Craven under Tex. Civ. Prac. & Rem. Code Ann., § 101.011, *et. seq.,* commonly known as the Texas Tort Claims Act.

68.     As a direct and proximate result of the actions of Defendants, Plaintiffs Qiana Nelson and Renee Nelson have suffered physical injury, physical pain and suffering, mental anguish, severe emotional distress, and embarrassment damages within the jurisdictional limits of this court.

## XVI. INJUNCTIVE RELIEF

69.     Plaintiffs Qiana Nelson and Renee Nelson, upon the trial of this matter, prays for injunctive relief such that Defendant David Craven and other members of the Fort Bend County Sheriff's Department will be investigated and/or disciplined and/or trained properly as there is no adequate remedy at law and current policies, or lack there of, create the potential for imminent and irreparable harm to members of the community. Defendant Robert Pelton is no longer in the employ of the Department and therefore immune from further injunctive relief through the Department. However, Plaintiffs seek injunctive relief as to the FBSO such that the Department will establish policies and

procedures to adequately investigate claims of deputy abuse, properly train its deputies, properly supervise its deputies, maintain properly operating audio/video devices in all patrol vehicles to objectively record traffic stops, and generally change its policies and procedures to prevent future occurrences of abuse.

## XVII. PUNITIVE/EXEMPLARY DAMAGES

70.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Additionally and in the alternative, the conduct of Defendants were done with malice and wanton indifference to and deliberate disregard for human life and the rights of Plaintiffs Qiana Nelson and Renee Nelson. Defendant Fort Bend County by and through officials with final policy making authority had actual or constructive knowledge of the destruction or spoliation of crucial relevant evidence in this case and consciously disregarded this fact and allowed the malicious prosecution of Plaintiffs to proceed. As such, Plaintiffs request punitive and exemplary damages to deter this type of conduct in the future. See e.g. *Pembaur v. Cincinnati,* 475 U.S. 469 (1986).  In the alternative, such heedless and reckless disregard of Plaintiff's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages be awarded against Defendants in a sum which is within the jurisdictional limits of this Court.

## XVIII. JOINT AND SEVERAL LIABILITY

71.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. PlaintiffS would show that Defendants named in this suit were

jointly and severally liable for the negligence and gross negligence which was the proximate cause of Plaintiffs' injuries.

## XIX. ATTORNEY'S FEES AND COSTS

72.     The allegations made in the preceding paragraphs are incorporated by reference, as necessary. Plaintiffs Qiana Nelson, Renee Nelson Colette Nelson requests the Court to award costs and reasonable attorneys fees incurred both in defense of the false charges brought by Defendants and in Plaintiff's prosecution of this litigation pursuant to The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 and Texas law.

## XX. CONDITIONS PRECEDENT

73.     Plaintiffs reserves the right to plead and prove the damages to which she is entitled to at the time to trial. All conditions to Plaintiffs' recovery have been performed or have occurred.

## XXI. TRIAL BY JURY

74.     Plaintiffs has paid a jury fee and demands trial by jury

## XXII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recover judgment from Defendants; pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; attorney's fees; and such other and further relief, general, special and consequential; at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

The Ceaser Law Firm

By: Kendric M. Ceaser
    Federal Bar No. 28895
    State Bar No. 24012404
    5100 Westheimer
    Suite 200
    Houston, Texas 77056
    (713) 796-9911
    (713) 796-8811 fax